UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| **JIMMIE RAGLAND, JR.,** } | |
| } | |
| **Plaintiff,** } | |
| } | |
| v. } | |
| } | Case No.: 4:17-cv-01111-ACA |
| **SOCIAL SECURITY** } | |
| **ADMINISTRATION,** } | |
| **COMMISSIONER,** } | |
| } | |
| **Defendant.** } | |

## MEMORANDUM OPINION

Plaintiff Jimmie Ragland, Jr. appeals the decision of the Commissioner of Social Security denying his claims for a period of disability, disability insurance benefits, and supplemental security income. Based on the court's review of the administrative record and the parties' briefs, the court **AFFIRMS** the Commissioner's decision.

**I.     PROCEDURAL HISTORY**

Mr. Ragland applied for a period of disability, disability insurance benefits, and supplemental security income on April 17, 2014. (R. 74-75). Mr. Ragland alleged that his disability began on March 10, 2011. (R. 48-49). The Commissioner initially denied Mr. Ragland's claims on June 24, 2014. (R. 98-106). Mr. Ragland requested a hearing before an Administrative Law Judge (ALJ). (R. 111-112). After holding a

hearing, the ALJ issued an unfavorable decision on May 6, 2016. (R. 21-34). On April 28, 2017, the Appeals Council declined Mr. Ragland's request for review (R. 1), making the Commissioner's decision final and ripe for the court's judicial review. *See* 42 U.S.C §§ 405(g); 1383(c).

## II. STANDARD OF REVIEW

The court's role in reviewing claims brought under the Social Security Act is a narrow one. The court "must determine whether the Commissioner's decision is supported by substantial evidence and based on proper legal standards." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (internal quotation marks and citation omitted). "Under the substantial evidence standard, this court will affirm the ALJ's decision if there exists 'such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) (quoting *Winschel*, 631 F.3d at 1178). The court may not "decide the facts anew, reweigh the evidence," or substitute its judgment for that of the ALJ. *Winschel*, 631 F.3d at 1178 (internal quotations and citation omitted). The court must affirm "[e]ven if the evidence preponderates against the Commissioner's findings." *Crawford v. Comm'r of Soc. Sec.,* 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam) (internal quotation marks and citation omitted).

Despite the deferential standard for review of claims, the court must "'scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence.'" *Henry*, 802 F.3d at 1267 (quoting

*MacGregor v. Bowen,* 786 F.2d 1050, 1053 (11th Cir. 1986)). Moreover, the court must reverse the Commissioner's decision if the ALJ does not apply the correct legal standards. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

## III. ALJ'S DECISION

To determine whether an individual is disabled, an ALJ follows a five-step sequential evaluation process. The ALJ considers:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience.

*Winschel*, 631 F.3d at 1178.

Here, the ALJ determined that Mr. Ragland has not engaged in substantial gainful activity since March 10, 2011, the alleged onset date. (R. 23). The ALJ found that Mr. Ragland has the following severe impairments: hypertension, diabetes mellitus, and degenerative disc disease. (R. 23). The ALJ concluded that Mr. Ragland does not suffer from an impairment or combination of impairments that meets or medically equals the severity of one of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. (R. 24).

After considering the evidence of record, the ALJ determined that Mr. Ragland has the RFC to perform:

light work as defined in 20 CFR 404.1567(b) and 416.967(b) except claimant can occasionally climb stairs and ramps but never ladders, ropes, and scaffolds; can occasionally balance, stoop, and kneel, but never crouch or crawl; can constantly reach, handle, finger, and feel; cannot work around concentrated exposure to extreme cold or wetness; and should never work around hazardous condition[s] such as unprotected heights or moving machinery.

(R. 26).

Based on this RFC, the ALJ found that Mr. Ragland cannot perform his past relevant work. (R. 32). Relying on testimony from a vocational expert, the ALJ concluded that jobs exist in the national economy that Mr. Ragland can perform, including cashier II, housekeeper, garment sorter, surveillance system monitor, telephone quotation clerk, and wire tapper. (R. 33). Accordingly, the ALJ determined that Mr. Ragland has not been under a disability as defined in the Social Security Act, from March 10, 2011 through the date of the decision. (R. 34).

## IV. DISCUSSION

Mr. Ragland argues that the court should reverse and remand the Commissioner's decision for five reasons: (1) the ALJ did not properly evaluate the opinion of treating physician Dr. Ochuko Odjegba; (2) the ALJ substituted her opinion for that of one-time examining physician Dr. Jarrod Warren; (3) the vocational expert's testimony on which the ALJ relied is not supported by substantial evidence because the ALJ's hypothetical was incomplete; (4) the ALJ's RFC finding is conclusory and violated SSR 96-8a; and (5) the ALJ did not properly consider Mr.

Ragland's testimony concerning the side effects of his medication. The court examines each issue in turn.

### A. The ALJ Properly Evaluated Dr. Odjegba's Opinion

An ALJ must give the opinion of a treating physician "substantial or considerable weight unless 'good cause' is shown to the contrary." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004) (internal quotation marks and citation omitted). Good cause exists when "(1) [the] treating physician's opinion was not bolstered by the evidence; (2) [the] evidence supported a contrary finding; or (3) [the] treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Id.* at 1240-41. "With good cause, an ALJ may disregard a treating physician's opinion, but he 'must clearly articulate [the] reasons' for doing so." *Winschel*, 631 F.3d at 1179 (quoting *Phillips*, 357 F.3d at 1241; alteration in *Winschel*).

On October 26, 2015, in support of Mr. Ragland's applications for disability benefits, Dr. Odjegba completed a physical capacities form. (R. 701). Dr. Odjegba stated that Mr. Ragland's chronic low back ache caused a number of limitations. For example, Dr. Odjegba opined that Mr. Ragland can sit upright in a standard chair for less than 30 minutes at a time. (R. 701). He further opined that Mr. Ragland can stand for less than 30 minutes at one time and can walk for less than 15 minutes at one time. (R. 701). According to Dr. Odjegba, in an 8-hour work day, Mr. Ragland must

spend three hours lying down, sleeping, or sitting with his legs propped at waist level or above. (R. 701).

The ALJ gave little weight to Dr. Odjegba's opinion because it "is not at all consistent with his treatment notes at [Quality of Life]." (R 29). Specifically, the ALJ explained that "claimant's past physical examinations with Dr. Odjegba show only tenderness in the claimant's back with improvement in his pain level with medication, (which he no longer takes according to his pharmacy records)." (R. 29). The ALJ clearly articulated good cause for rejecting Dr. Odjegba's opinion.

With the exception of back tenderness and some positive straight leg raises, Dr. Odjegba's treatment notes reflect generally normal musculoskeletal and extremities findings. (R. 633, 640, 661, 669, 677, 686, 692, 706, 712, 718, 725). Dr. Odjegba's treatment notes also demonstrate that on several occasions, Mr. Ragland reported improved back pain with medication. (R. 635, 641, 647, 653, 662).

Mr. Ragland argues that the treatment he received during 12 specific visits with Dr. Odjegba between September 2014 and December 2015 supports the limitations that Dr. Odjegba identified in his physical capacities assessment. (Doc. 10 at 25-27) (citing R. 628-641; 647-694; 708-727). The court is not persuaded. Mr. Ragland sought treatment for back pain on only six of those 12 occasions. (*See* R. 628, 635, 647, 656, 664, 708). Dr. Odjegba made no significant examination findings regarding Mr. Ragland's back (*see* R. 628-641, 647-670, 708-713), and any diagnoses concerning Mr. Ragland's back pain do not establish work-related limitations

6

associated with his back condition. *See* 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3) ("The more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight we will give that medical opinion."); *Moore v. Barnhart*, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005) (explaining that the mere existence of an impairment "does not reveal the extent to which they limit her ability to work or undermine the ALJ's determination in that regard") (citing *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986)).

In addition to finding that Dr. Odjegba's opinion is inconsistent with his own treatment notes, the ALJ found Dr. Odjegba's opinion less persuasive in light of other medical evidence in the record. (R. 29). Substantial evidence supports this finding. During a number of examinations with other medical providers during the relevant time period, with the exception of some back tenderness, Mr. Ragland had normal extremities and normal musculoskeletal range of motion, muscle strength, and stability. (R. 482-483, 485-486, 490, 494, 499, 508, 512, 517).

Because good cause existed for discounting Dr. Odjegba's opinion, substantial evidence supports the ALJ's decision to give the opinion little weight. *See Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 822 (11th Cir. 2015) ("We will not second guess the ALJ about the weight assigned the treating physician's opinion deserves so long as he articulates a special justification for it."); *Crawford*, 363 F.3d at 1159-61 (finding that substantial evidence supported the ALJ's decision to discredit the opinions of the claimant's treating physicians where those physicians' opinions

regarding the claimant's disability were inconsistent with the physicians' treatment notes and unsupported by the medical evidence).

### B. *The ALJ Did Not Substitute His Opinion for that of Dr. Warren*

The opinion of a one-time examiner like Dr. Warren is not entitled to deference. *Crawford*, 363 F.3d at 1160 (the opinion of a one-time examining physician is "not entitled to great weight") (citing *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987)). In addition, "[t]he ALJ may reject the opinion of any physician when the evidence supports a contrary conclusion." *McCloud v. Barnhart*, 166 F. App'x 410, 418-19 (11th Cir. 2006) (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1240 (11th Cir. 1983)).

Dr. Warren examined Mr. Ragland and completed a physical capacities form on October 23, 2015. (R. 696-670). Dr. Warren opined that Mr. Ragland can sit upright in a standard chair for one hour at a time. (R. 696). He also opined that Mr. Ragland can stand for less than 30 minutes at one time and can walk for less than one hour at a time. (R. 696). According to Dr. Warren, in an 8-hour work day, Mr. Ragland must spend five hours lying down, sleeping, or sitting with his legs propped at waist level or above. (R. 701). Dr. Warren also explained the side effects of Mr. Ragland's medications as follows:

> Gabapentin is noted to cause sedation/somnolence, especially in combination of with pain medications such as tramadol. It is also noted to cause weight gain. Meloxicam can result in gastrointestinal complications such as ulcers. The combination of baclofen, lisinopril/HCTZ, and metformin ca[n] result in decreased efficacy of the

8

medication and resultant hyperglycemia. The combination of baclofen and gabapentin and tramadol can reduce seizure threshold and potentially cause central nervous system depression.

(R. 696).

The ALJ assigned little weight to Dr. Warren's opinions for a number of reasons. (R. 30). The ALJ stated:

> [I]t is emphasized that the claimant underwent the examination that formed the basis of the opinions in question not in an attempt to seek treatment for symptoms, but rather, though attorney referral and in connection with an effort to generate evidence for the current appeal. Further, the doctor was presumably paid for the report. Although such evidence is certainly legitimate and deserves due consideration, the context in which it was produced cannot be entirely ignored. In addition, the extensive list of medication side effects provided by Dr. Warren in the Physical Capacities Evaluation form are only possible side effects. While Dr. Warren indicated that these medications may cause the listed side effects; he gave no opinion regarding any actual side effects reported by the claimant. As discussed earlier, the claimant has not reported any significant side effects related to his medication. Additionally, it is highly questionable whether the claimant is actually taking some or all of the medications listed by Dr. Warren. The undersigned finds that the extensive limitations opined by Dr. Warren are inconsistent with the claimant's objective findings and conservative treatment course.

(R. 30).

Mr. Ragland does not challenge the ALJ's stated reasons for assigning less weight to Dr. Warren's opinion, and contrary to Mr. Ragland's suggestion (*see* Doc. 10 at 35-39), the ALJ clearly articulated reasons for rejecting Dr. Warren's opinion (*see* R. 30). Mr. Ragland appears to argue that in discounting Dr. Warren's opinion, the ALJ substituted her own opinion for that of Dr. Warren. (*See* Doc. 10 at 34-35).

9

Mr. Ragland is correct that an ALJ may not substitute her own opinion of a claimant's condition for that of a medical expert. *See Freeman v. Schweiker,* 681 F.2d 727, 731-32 (11th Cir. 1982). Mr. Ragland cites a number of cases that stand for this general proposition, but Mr. Ragland advances no specific argument regarding how the ALJ did so in this case. (Doc. 10 at 34-35). Moreover, although an ALJ "may not make medical findings herself," the ALJ's responsibility is "to resolve conflicting medical opinions." *Ybarra v. Comm'r of Soc. Sec.*, 658 F. App'x 538, 543 (11th Cir. 2016) (finding that "the ALJ did not usurp the role of a physician" by weighing the credibility of a medical expert's opinion "in light of other record evidence"); *see Snow v. Colvin*, 8 F. Supp. 3d 1345, 1353 (N.D. Ala. 2014) ("[W]ere courts to find that ALJs impermissibly substitute their own opinions for those of medical experts any time ALJs reject the opinions of those medical experts, the ALJ's role in Social Security proceedings would be essentially meaningless.") (citing *Miles v. Chater*, 84 F.3d 1397, 1401 (11th Cir. 1996)).

Accordingly, the court finds that in assigning less weight to Dr. Warren's opinion, the ALJ did not impermissibly substitute her opinion for that of a medical examiner.

### C. *Vocational Expert Hypothetical*

"When the ALJ uses a vocational expert, the ALJ will pose hypothetical question(s) to the vocational expert to establish whether someone with the limitations that the ALJ has previously determined that the claimant has will be able to secure

employment in the national economy." *Phillips*, 357 F.3d at 1240. "In order for a [vocational expert's] testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1999). But an ALJ is not required to include findings in a hypothetical question that the ALJ properly rejects as unsupported. *Crawford*, 363 F.3d at 1161.

Mr. Ragland argues that the ALJ improperly relied on testimony that the vocational expert gave in response to a hypothetical question that did not include all of the limitations associated with his back pain, particularly his need to lie down for at least three and up to five hours during an 8-hour work day. (Doc. 10 at 41). The court disagrees.

When questioning the vocational expert during the administrative hearing, the ALJ posed hypothetical questions encompassing the limitations identified in her RFC findings, and based on the answers to those questions, the ALJ concluded that Mr. Ragland can perform certain jobs. (R. 33-34; 66-68). Contrary to Mr. Ragland's assertion, the ALJ was not required to credit the vocational expert's testimony in response to another hypothetical and his alleged need to lie down for three to five hours in an 8-hour work day. Dr. Odjegba's opinion and Dr. Warren's opinion are the only pieces of evidence in the record that support this postural limitation. As explained above, substantial evidence supports the ALJ's decision to reject Dr. Odjegba's findings, and Mr. Ragland does not challenge the ALJ's articulated reasons

11

for rejecting Dr. Warren's findings. *See supra* pp. 5-10. Therefore, the ALJ did not err in failing to adopt the vocational expert's testimony in response to a hypothetical that contained limitations that the ALJ found to be unsupported by the record evidence. *See Crawford*, 363 F.3d at 1161; *Wright v. Comm'r of Soc. Sec.*, 327 F. App'x 135, 137 (11th Cir. 2009) ("[I]f additional impairments asserted by a claimant are not supported by substantial evidence, they do not need to be included in a hypothetical.").

### D. *The ALJ's RFC Determination Complies with SSR 96-8*

The RFC describes the types of work that a claimant may perform despite limitations caused by his impairments. *Phillips*, 357 F.3d at 1238 (citing 20 C.F.R. § 404.1545(a). The ALJ determined that Mr. Ragland can perform a range of light work with a number of postural, exertional, and environmental limitations. (R. 26).

Mr. Ragland argues that the ALJ's RFC determination is not supported by substantial evidence because the RFC is conclusory and does not comply with SSR 96-8p. (Doc. 9, pp. 25-30). The court disagrees.

SSR 96-8p states that:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The

12

> adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.
>
> . . .
>
> The RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence.
>
> . . .
>
> The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted.

SSR 96-8p, 1996 WL 374184, at *7 (footnote omitted).

> In making her decision, the ALJ:
>
> considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. §§ 404.1520 and 416.920 and SSR 96-4p.

(R. 26). In addition to medical and objective evidence, the ALJ considered formal medical opinions, Mr. Ragland's treatment history, and his testimony about his alleged limitations. (R. 26-32). The ALJ's decision sufficiently indicates that she considered all of the relevant evidence in arriving at her RFC determination. *See Carson v. Comm'r of Soc. Sec.*, 440 F. App'x 863, 864 (11th Cir. 2011) ("Following [SSR 96-8p's] rubric, the ALJ fully discussed and evaluated the medical evidence, [the claimant's] testimony, and the effect each impairment has on [the claimant's] daily activities."); *Freeman v. Barnhart*, 220 F. App'x 957, 960 (11th Cir. 2007)

("[T]he ALJ complied with SSR 96-8p by considering [the claimant's] functional limitations and restrictions and, only after he found none, proceeding to express her residual functional limitations in terms of exertional levels.").

Mr. Ragland suggests that the ALJ's RFC is not supported by substantial evidence because the ALJ was required to rely on a physical capacities assessment from a treating or examining physician. (*See* Doc. 10 at 44, citing *Thomason v. Barnhart*, 34 F. Supp. 2d 1326 (N.D. Ala. 2004) and *Coleman v. Barnhart*, 264 F. Supp. 2d 1007 (S.D. Ala. 2003)). Mr. Ragland's argument is not persuasive. The RFC determination is an issue reserved to the Commissioner, and although an ALJ will consider medical source opinions in reaching that determination, an ALJ is not required to base her RFC finding on the opinion of a physician. *See* 20 C.F.R. §§ 404.1527(d)(2); 404.927(d)(2); *Castle v. Colvin*, 557 F. App'x 849, 853-54 (11th Cir. 2014) (substantial evidence supported ALJ's RFC determination even though ALJ rejected treating physician's opinion, and the record contained no other physical capacities assessment).

Mr. Ragland also submits that this case is similar to *Walker v. Bowen*, 826 F.2d 941 (11th Cir. 1987), a case in which the Eleventh Circuit found that substantial evidence did not support the Commissioner's finding that the claimant could perform light work. (Doc. 10 at 45). Mr. Ragland block quotes from the *Walker* decision, but he offers no substantive argument regarding why the facts of this case are analogous to *Walker*. (Doc. 10 at 45-46). And contrary to Mr. Ragland's argument (*see* Doc. 10

at 47), the ALJ's RFC findings are not mere conclusions without analysis. *See supra* pp. 13-14; *see also* R. 26-32.

     E.    *The ALJ Properly Considered Mr. Ragland's Testimony Regarding the Side Effects of Medication*

Mr. Ragland's final challenge on appeal is that the ALJ failed to adequately consider his testimony concerning the side effects of his medication. (Doc. 10 at 47). In support of this contention, Mr. Ragland block quotes two non-binding district court decisions. (*See* Doc. 10 at 47-50; Doc. 12 at 14-15). Mr. Ragland points to no specific error that he contends the ALJ committed, and he does not explain what medication side effects he believes the ALJ failed to consider or how the failure to do so constitutes reversible error under the circumstances of this case. (*See id.*). In any event, the court finds that the ALJ properly evaluated Mr. Ragland's testimony regarding the side effects of his medication.

To establish disability based on subjective pain testimony, a claimant must show: "(1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002). In evaluating a claimant's testimony, an ALJ considers: (1) the claimant's daily activities; (2) the "location, duration, frequency, and intensity" of the claimant's symptoms; (3) "[p]recipitating and aggravating factors"; (4) the effectiveness and side

15

effects of any medications; and (5) treatment or other measures taken by the claimant to alleviate symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). The ALJ reviews these factors in light of other evidence in the record. 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4). "[C]redibility determinations are the province of the ALJ," and the court "will not disturb a clearly articulated credibility finding supported by substantial evidence." *Mitchell v. Comm'r of Soc. Sec.*, 771 F.3d 780, 782 (11th Cir. 2014).

After summarizing Mr. Ragland's testimony, the ALJ found that Mr. Ragland's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (R. 26). However, the ALJ determined that Mr. Ragland's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record. . . ." (R. 26). The ALJ recognized that during the hearing, Mr. Ragland alleged that his hypertension and diabetes medication "cause headaches, nausea, blurry vision and/or leg problems." (R. 29; *see* R. 58-59). The ALJ then noted that "none of these allegations are supported by the medical evidence of record. . . . Indeed, the claimant has specifically denied experiencing these symptoms and has made no report of any medication side effects." (R. 29). Substantial evidence supports this finding.

In April 2012, Mr. Ragland experienced blurry vision related to his diabetes generally (R. 496-497), but Mr. Ragland never claimed that his diabetes medication caused side effects. In August 2014 and October 2014, Mr. Ragland was experiencing

16

headaches associated with his hypertension (R. 621, 635), but the record contains no evidence that Mr. Ragland reported side effects associated with his hypertension medication. And in October 2015, Mr. Ragland specifically denied side effects related to his hypertension medication. (R. 702). Moreover, during numerous medical examinations, Mr. Ragland denied headaches, nausea, blurry vision, and leg problems. (R. 482, 485, 488-489, 493, 498, 502-03, 506-07, 511-512, 515-516, 524, 597, 623-624, 630-631, 638, 650, 659, 667, 671, 674-675, 683, 691, 705, 711, 717, 724).

Accordingly, in assessing Mr. Ragland's subjective complaints of pain, the ALJ did not err in failing to consider the side effects of Mr. Ragland's medication.

## V. CONCLUSION

For the reasons explained above, the court concludes that the Commissioner's decision is supported by substantial evidence, and the Commissioner applied proper legal standards in reaching the determination. Therefore, the Court **AFFIRMS** the Commissioner's final decision. The Court will enter a separate order consistent with this memorandum opinion.

**DONE** and **ORDERED** this March 12, 2019.

_____
**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE